**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

GERARDO ROSENDO                    :
VARGAS, JR., *et al.*,              :
    Plaintiffs,                    :
                                    :
v.                                  :        **CIVIL ACTION NO. 25-CV-0957**
                                    :
BERKS COUNTY CHILDREN AND           :
YOUTH SERVICES, *et al.*,           :
    Defendants.                    :

**MEMORANDUM**

GALLAGHER, J.                                               **APRIL  29, 2025**

      Plaintiffs Gerardo Rosendo Vargas, Jr., and Jaqueline Rios bring this *pro se* civil action alleging their rights were violated in a Pennsylvania state court child dependency matter.[1] Named as Defendants are Berks County, Berks County Children and Youth Services ("CYS"), and CYS employees Rebecca Mill, Beth Bashore, Consuelo Zavala, and Karla Sanders. Plaintiffs seek to proceed *in forma pauperis*.  Vargas and Rios each previously brought claims, which were dismissed upon statutory screening, based on the same underlying events that are at issue in the case at bar.  *See Vargas v. Berks County Children Youth Services, et al.*, Civil Action No. 24-5228 ("*Vargas I*") and *Rios v. Berks County Children & Youth Services, et al.*, Civil

---

[1] Plaintiffs initiated this matter on February 21, 2025.  Because Plaintiffs failed to sign their Complaint (ECF No. 1), as required by Federal Rule of Civil Procedure 11, and failed to either pay the required fees or file applications to proceed *in forma pauperis*, they were directed to correct these initial deficiencies by Order dated February 27, 2025 (ECF No. 3).  In response to the Court's directives, Vargas and Rios submitted the necessary documents to proceed.  (*See* ECF Nos. 4, 5, 6, 7.)  Plaintiffs also submitted a duplicate copy of the initial Complaint, which was docketed as an Amended Complaint.  (ECF No. 8.)  The Amended Complaint is the operative pleading in this case.  *See Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) ("[T]he most recently filed amended complaint becomes the operative pleading.").

Action No. 24-5235 ("*Rios I*").  Accordingly, and as set forth more fully below, the Court will

grant Plaintiffs *in forma pauperis* status and dismiss the Amended Complaint.

## I.   BACKGROUND AND FACTUAL ALLEGATIONS[2]

In *Vargas I*, Vargas named as Defendants Berks County Children Youth Services and

Rebecca Mill.  (*Vargas I*, ECF No. 2.)  He claimed that CYS attempted to terminate his rights

without proper counsel and that his due process rights were violated when his son was taken

from the hospital without a court order.  (*Id.* at 3.)  Vargas further contended that "they" acted in

bad faith by recommending services and then using those services against him, gave false

statements under oath, and violated his "right to record public matters in public places."  (*Id.*)  As

relief, Vargas sought the return of his son, restoration of his parental rights, and monetary

damages.  (*Id.* at 4.)

In a December 2, 2024 Memorandum and Order, the Court granted Vargas leave to

proceed *in forma pauperis*, screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and

dismissed his claims.  (*Vargas I*, ECF Nos. 4 and 5.)  The Court determined that the allegations

in Vargas's Complaint were undeveloped and explained the basis for finding that Vargas failed

to allege plausible constitutional claims.  To the extent Vargas sought to assert that his Sixth

Amendment rights were violated in the dependency proceedings because he was not afforded

counsel, such claim failed because the Sixth Amendment does not apply to civil cases.  (*Vargas*

---

[2] The factual allegations are taken from the Amended Complaint (ECF No. 8) and
publicly available dockets of which this Court takes judicial notice.  *See Buck v. Hampton Twp.
Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (courts may consider "matters of public record" in
determining whether a pleading has stated a claim); *Oneida Motor Freight, Inc. v. United Jersey
Bank*, 848 F.2d 414, 416 n.3 (3d Cir. 1988) (holding that court may take judicial notice of the
record from previous court proceedings).  The Court adopts the sequential pagination supplied by
the CM/ECF docketing system.

Case 5:25-cv-00957-JMG    Document 14    Filed 04/29/25    Page 3 of 12

*I*, ECF No. 4 at 3-4 (citing *Turner v. Rogers*, 564 U.S. 431, 441 (2011).)[3]  To the extent he

sought to assert due process claims based on alleged violations of his rights during state court

dependency matters, such claims were undeveloped.  (*See id.* at 4-5.)[4]  The Court concluded that

---

[3] The Court explained that Pennsylvania law provides parents a right to counsel in dependency hearings.  *See In re J.S.*, 980 A.2d 117, 122 (Pa. Super. Ct. 2009); 42 Pa. C.S. § 6337 ("[A] party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him.").  However, Vargas did not explain how the named Defendants deprived him of whatever right to counsel he may have had.

[4] The Court explained that the Fourteenth Amendment's Due Process Clause "prohibits the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process."  *Croft v. Westmoreland Cnty. Children and Youth Servs.*, 103 F.3d 1123, 1125 (3d Cir. 1997).  To state a claim under § 1983 for a violation of one's procedural due process rights, "a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006).  "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  The United States Supreme Court has recognized that there is a "fundamental liberty interest of natural parents in the care, custody, and management of their child."  *Santosky v. Kramer*, 455 U.S. 745, 753 (1982).  However, "this liberty interest in familial integrity is limited by the compelling governmental interest in the protection of children."  *Croft*, 103 F.3d at 1125.
      With respect to a substantive due process claim brought against a child welfare worker, the United States Court of Appeals for the Third Circuit has explained that,

> a substantive due process claim requires "decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the conscience.'"  [*Miller v. City of Philadelphia*, 174 F.3d 368, 376 (3d Cir.1999)]; *see also Croft v. Westmoreland Cnty. Children & Youth Servs.*, 103 F.3d 1123, 1124-26 (3d Cir. 1997).  In so holding, we observed that "[t]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case," because a "higher fault standard is proper when a government official is acting instantaneously and making pressured decisions without the ability to fully consider their risks."  *Miller*, 174 F.3d at 375.  In such situations, the "standard of culpability" necessary for a child welfare employee's actions to shock the conscience must generally "exceed both negligence and deliberate indifference."  *Id.*

*B.S. v. Somerset Cnty.*, 704 F.3d 250, 267-68 (3d Cir. 2013).  Thus, to be plausible, a claim related to a social worker removing a child from a parent's custody "requires decision-making by a social worker that is so clearly arbitrary . . . [that it] can properly be said to 'shock the

even under a liberal reading of the Complaint, Vargas's allegations were too undeveloped to allege plausibly either a procedural or substantive due process claim against either of the named Defendants.  (*See id.* at 5 (citing *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief.")).

The Court also determined that Vargas failed to adequately plead a claim against CYS based on *Monell* liability.  (*See id.* at 5-7.)[5]  Even if Vargas had plausibly alleged a violation of a constitutional right, to allege a plausible *Monell* claim against CYS, Vargas needed to specify a

---

conscience.'"  *Id.* at 268.  A plaintiff must allege that the government's actions "reach a level of gross negligence or arbitrariness."  *Mulholland v. Government Cnty. of Berks, Pa.*, 706 F.3d 227, 241 (3d Cir. 2013).

[5] The Court explained that municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).  Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'"  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)).

There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice."  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).  "To satisfy the [*Monell*] pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.*  Bald allegations of the existence of a policy are not enough to establish the county's liability; there must be a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.  *City of Canton v. Harris*, 489 U.S. 378, 386 (1989).

Berks County policy or custom and allege an affirmative link between the policy or custom and the violation of his rights. Because he did not do so, his claims against CYS were dismissed. (*Id.* at 7.) The Court further found that Vargas had not stated any basis for a claim against Rebecca Mill. (*See id.* at 7-8.) The Court explained that in a § 1983 action the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. (*See id.*) The claims against Mill were dismissed because, apart from listing Mill in the caption and list of Defendants, Vargas alleged no facts tying Mill to the acts alleged in the Complaint.[6]

---

[6] The Court also explained that child welfare workers are entitled to immunity in certain instances. (*See Vargas I*, ECF No. 4 at 8.) In analyzing the actions of child welfare workers to determine whether a constitutional violation has occurred, courts will consider whether the child welfare worker is entitled to immunity for such actions. In *Ernst v. Child & Youth Servs. of Chester Cnty.*, the Third Circuit held that child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings" and that this includes "the formulation and presentation of recommendations to the court in the course of such proceedings." 108 F.3d 486, 495 (3d Cir. 1997). The Circuit reasoned that:

> the functions performed by [child welfare workers] in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers.

*Id.* The *Ernst* court further noted in *dicta* that it would be unwilling to accord absolute immunity to "investigative or administrative" actions taken by child welfare workers outside the context of a judicial proceeding. *Id.* at 497 n.7. The Third Circuit subsequently clarified that immunity would apply to investigative actions that are taken as part of an ongoing judicial proceeding for which the child welfare worker serves as an advocate for the state. *See B.S.*, 704 F.3d at 269-70. "The key to the absolute immunity determination is . . . the underlying function that the investigation serves and the role the caseworker occupies in carrying it out." *Id.* at 270.

Actions taken after the initiation of dependency proceedings may also be entitled to absolute immunity. *See generally Sporish v. Cnty. of Delaware, Pa.*, No. 12-6363, 2013 WL 5272832, at *8 (E.D. Pa. Sept. 18, 2013) (holding that agency employees who made phone calls

Vargas was given an opportunity to correct the defects in his claims by filing an amended complaint.  (*See Vargas I*, ECF No. 5.)  When Vargas failed to do so, the Complaint was dismissed with prejudice by Order dated January 21, 2025, and the case was closed.  (*Vargas I*, ECF No. 6.)

Plaintiff Rios commenced a civil matter on the same day that Vargas filed *Vargas I*.  Rios also named CYS and Rebecca Mill as Defendants.  (*Rios I*, ECF No. 2.)  Rios's Complaint, albeit similarly undeveloped, raised the same claims against the same defendants as Vargas presented in *Vargas I*.  (*See id.*)  In an October 24, 2024 Memorandum and Order, the Court granted Rios *in forma pauperis* status, screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), and dismissed her claims with the same guidance and analysis as presented in *Vargas I*.  (*See Rios I*, ECF Nos. 4 and 5.)  Rios too was given leave to file an amended complaint if she could correct the defects identified by the Court.  (*Rios I*, ECF No. 5.)  When Rios failed to do so, her Complaint was dismissed with prejudice by Order dated December 18, 2024, and the case was closed.  (*Rios I*, ECF No. 6.)

In the case at bar, Vargas and Rios again seek to present claims based on alleged violations of their constitutional rights in the same state court dependency matter that was at issue in *Vargas I* and *Rios I*.  (*See* Am. Compl. at 1-10.)  Plaintiffs claim that their Due Process

___

that were arguably outside the dependency proceedings were entitled to immunity for those acts because the phone calls were made to prepare for dependency hearing); *Lowe v. Lancaster Cnty. Child. & Youth Soc. Servs.*, No. 20-1413, 2020 WL 7223416, at *8 (E.D. Pa. Dec. 8, 2020) (holding that caseworkers were absolutely immune on claim that false information was presented in the petition or at the hearing); *Rodriguez v. Montgomery Cnty. Off. of Child. & Youth*, No. 15-6186, 2016 WL 2897470, at *4-5 (E.D. Pa. May 17, 2016) (holding that caseworkers were absolutely immune on claims of making false statements to the Juvenile Court and failing to follow agency policies and procedures in removing the child from mother's custody because alleged conduct "was related to initiating, preparing for, and prosecuting the dependency proceedings").

rights were violated during state court proceedings when their child was removed from their custody and by "delaying services, falsifying records, and obstructing reunification." (*Id.* at 2.) They also contend that their First Amendment "right to record public officials" was violated and that Defendants retaliated against them. (*Id.* at 3.) In addition, one of the Plaintiffs, although the Amended Complaint does not specify which Plaintiff, asserts a violation of the Americans with Disabilities Act ("ADA") for the refusal to accommodate a medical condition, urinary retention, for purposes of drug screens. (*Id.*) The Amended Complaint indicates that Mill, Bashore, and Zavala "were assigned to Plaintiff's[7] case and engaged in misconduct" and that Sanders "oversaw caseworkers and permitted unlawful actions." (*Id.* at 4.) However, the Amended Complaint does not otherwise describe the individual Defendants' actions.

Plaintiffs allege that on May 26, 2022, CYS "wrongfully obtained emergency custody of Plaintiff's child based on false allegations regarding Plaintiff's drug use and fitness as a parent." (*Id.* at 4-5.) The child was placed in foster care. (*Id.* at 5.) Plaintiffs contend that CYS's claims of substance abuse are contradicted by negative drug tests and that Plaintiffs complied with case plan requirements. (*Id.*)

With regard to the ADA allegations, the Amended Complaint states that "Plaintiff suffers from urinary retention, a medical condition that makes urination on demand impossible." (*Id.* at 5-6.) Plaintiffs claim to have provided medical documentation of the condition to CYS, but "Defendants" refused to accept the documentation, forced Plaintiff to attempt urine drug tests knowing it was impossible, and denied "Plaintiff access to mouth swab tests until three months before the Termination of Parental Rights (TPR) hearing." (*Id.* at 6.) Plaintiffs allege that as a

---

[7] Although this case is brought by both Vargas and Rios, the Amended Complaint repeatedly refers to a singular Plaintiff. The Court understands these references to be in error and reads the allegations of the Amended Complaint as referring to both parents.

result, CYS "falsely accused Plaintiff of failing to comply with drug testing, using it as justification for continued separation from Plaintiff's child." (*Id.*)

Plaintiffs further allege that CYS engaged in retaliatory acts against them by falsifying case records to paint Plaintiffs as noncompliant, changing testing procedures at random to create barriers to compliance, refusing to acknowledge evidence favorable to Plaintiffs, and making false claims about Plaintiffs' address history, drug test results, and parental fitness. (*Id.* at 7.) Based on their allegations, Plaintiffs seek declaratory and injunctive relief, as well as monetary damages. (*Id.* at 9.)

## II.    STANDARD OF REVIEW

The Court grants Plaintiffs leave to proceed *in forma pauperis* because it appears that they are incapable of paying the fees to commence this civil action.  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.  Because Plaintiffs are proceeding *pro se*, the Court construes the

allegations in the Amended Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "With respect to affirmative defenses, such as res judicata, dismissal is proper if application of the defense is apparent on the face of the complaint; [the Court] may also look beyond the complaint to public records, including judicial proceedings." *Weinberg v. Scott E. Kaplan, LLC*, 699 F. App'x 118, 120 n.3 (3d Cir. 2017); *Gimenez v. Morgan Stanley DW, Inc.*, 202 F. App'x 583, 584 (3d Cir. 2006) (*per curiam*) (observing that "[r]es judicata is a proper basis for dismissal under 28 U.S.C. § 1915(e)(2)(B)").

## III.    DISCUSSION

Plaintiffs assert constitutional claims pursuant to 42 U.S.C. § 1983, as well as ADA claims, based on alleged violations of their rights in the underlying state dependency matter that was also the subject of *Vargas I* and *Rios I*. However, their Amended Complaint cannot proceed. *Vargas I* and *Rios I* were dismissed with prejudice and Plaintiffs' attempt to assert claims based on the same underlying events is therefore barred by the doctrine of claim preclusion.

"Claim preclusion — which some courts and commentators also call res judicata — protects defendants from the risk of repetitious suits involving the same cause of action once a court of competent jurisdiction has entered a final judgment on the merits." *Beasley v. Howard*, 14 F.4th 226, 231 (3d Cir. 2021) (internal quotations omitted). Claim preclusion prevents parties from raising issues that could have been raised and decided in a prior case regardless of whether those issues were litigated. *Id.* In other words, "[t]he prior judgment's preclusive effect . . . extends not only to the claims that the plaintiff brought in the first action, but also to any claims the plaintiff could have asserted in the previous lawsuit." *Id.* at 231-32. "Claim preclusion

similarly reaches theories of recovery: a plaintiff who asserts a different theory of recovery in a separate lawsuit cannot avoid claim preclusion when the events underlying the two suits are essentially the same." *Id.* at 232; *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010) ("'Rather than resting on the specific legal theory invoked, res judicata generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.'") (quoting *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983-84 (3d Cir. 1984)). Thus, "[t]he 'essential similarity of the underlying events giving rise to the various legal claims' determines whether two causes of action are the same for claim preclusion purposes." *Mann v. A.O. Smith Corp.*, No. 21-2361, 2023 WL 2344225, at *2 (3d Cir. Mar. 3, 2023) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014)).

Three elements are required for claim preclusion to apply: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Marmon Coal Co. v. Dir., Office Workers' Compensation Programs*, 726 F.3d 387, 394 (3d Cir. 2013) (internal quotation marks omitted). "A dismissal under the *in forma pauperis* statute . . . qualifies as an adjudication on the merits carrying preclusive effect for purposes of any future *in forma pauperis* actions raising the same claim." *Gimenez*, 202 F. App'x at 584; *see also Mann*, 2023 WL 2344225, at *2 ("A district court's dismissal without prejudice for failure to state a claim is converted into a dismissal with prejudice if plaintiff declares his intention to stand on his complaint by failing to timely amend it.") (cleaned up). Regarding the second element, claims against individuals who were not parties to the prior lawsuit may be precluded in certain circumstances, including when there is a substantive legal relationship between the party and nonparty. *Taylor v. Sturgell*, 553 U.S. 880, 893-94 (2008).

Application of claim preclusion is appropriate here and is apparent on the face of the Amended Complaint.  The dismissals of *Vargas I* and *Rios I* were final judgments on the merits against the same parties or their privies.  *See Gage v. Somerset Cnty.*, No. 22-2696, 2023 WL 179847, at *1 (3d Cir. Jan. 13, 2023) (*per curiam*) (finding privity requirement satisfied to bar claims against supervisor who was named in second lawsuit because he allegedly knew about his employees' illegal conduct and sought to cover it up); *see also Sheridan*, 609 F.3d at 261 ("The fact that there are additional parties in *Sheridan II* does not affect our conclusion" that claim preclusion applies); *Pasqua v. Cnty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *12 (D.N.J. Nov. 27, 2017) ("[W]here the claims presented in the two actions are identical, the County Defendants were named in both actions, and the Individual Defendants have a close and significant relationship to the County Defendants, the Court finds that the 'same parties or their privies' requirement of the claim preclusion defense has been satisfied.") (citing cases). Additionally, the underlying events giving rise to the various legal claims in *Vargas I* and *Rios I* are "essentially similar" to the underlying events at issue here because the cases are all based on the same conduct surrounding the dependency hearings and CYS's handling of Vargas and Rios's case.  The Amended Complaint is based on the same causes of action, or claims that could have been raised, in *Vargas I* and *Rios I*.  These include allegations, for example, that Vargas's and Rios's rights were violated due to the removal of their child from their custody and the procedures utilized during the state dependency court matter, including, *inter alia*, the drug screening and determinations based on the results.  Thus, all three elements of claim preclusion are present and Vargas and Rios may not proceed in this matter.

As an alternative basis for dismissal, the Amended Complaint is conclusory and undeveloped and fails to meet the *Iqbal* pleading standard.  Without sufficient supporting facts,

11

the conclusory allegations in the Amended Complaint do not state plausible claims against any named Defendant. *See Iqbal*, 556 U.S. at 678 (citation omitted) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."). The Court previously explained to both Plaintiffs what factual elements would be necessary to state claims in this context, but their pleading still rests mostly on bald allegations of wrongdoing as opposed to explanations of how the Defendants' acts or omissions gave rise to a constitutional or other federal violation.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss the Amended Complaint with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim. Leave to amend will not be given because the Court concludes that amendment would be futile under the circumstances of this case. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002). Vargas and Rios are warned that if either continues to repeatedly pursue claims that have already been resolved and rejected, the Court will consider whether it is appropriate to limit his and/or her ability to file in the future.

An appropriate Order follows, which dismisses this case. *See* Federal Rule of Civil Procedure 58(a).

BY THE COURT:

*/s/ John M. Gallagher*

**JOHN M. GALLAGHER, J.**